UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FAMOUS ENTERPRISES INC., *et al.* | ) ) ) | Case No.: 1:24 CV 61 |
| Plaintiffs | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| TRADITIONS OF AMERICA, L.P., *et al.* | ) ) | |
| Defendants | ) | ORDER |

Currently pending before the court in the above-captioned case is Defendants Traditions of America, L.P. ("Traditions") and TOA Construction, Inc.'s ("TOA") (collectively, "Defendants") Motion to Dismiss and Motion to Transfer Venue ("Motions") (ECF Nos. 12, 13). For the following reasons, the court denies the Motions.

## I. BACKGROUND

### A. Factual Background

Plaintiffs Famous Enterprises, Inc. and Famous Distribution, Inc., dba Famous Supply (collectively, "Famous") are Ohio corporations. (Am. Compl. ¶ 1, ECF No. 7.) Defendants Traditions, a Pennsylvania limited partnership, and TOA, a Pennsylvania corporation, are allegedly affiliated entities. (*Id.* ¶¶ 2–4.) On or about February 8, 2013, Defendant Traditions and/or TOA applied for a line of credit with Plaintiff Famous Enterprises. (Am. Compl. ¶ 7; *see also* Ex. A at PageID 68.) The credit application required Traditions and/or TOA to agree to certain terms and conditions, including the consequences they would face should they default in the payment of any invoice. (*Id.* ¶ 8; Ex. A at PageID 69.) In reliance on Tradition's and/or TOA's representations in the

credit application, Famous opened an account through which Defendants could purchase goods and materials from Plaintiff for various property improvement projects. (*Id.* ¶ 10–11.)

Between May 30, 2014, and October 13, 2022, Defendants ordered thousands of goods and materials from Famous, all of which Famous delivered to Defendants along with the relevant invoices. (*Id.* ¶ 12; *see also* Ex. B at PageID 70–76.) But, Defendants allegedly failed to pay for most of the goods, thereby incurring an unpaid principal balance on their account with Famous for $168,788.98 plus interest. (*Id.* ¶ 14.) On October 26, 2023, Famous notified Defendants of the default, and demanded Defendants pay the past due amount immediately plus the two percent monthly interest agreed to in credit application. (*Id.* ¶ 15; Ex. D at PageID 579.) Defendants did not cure the defaults, and so Famous filed the instant action. (*Id.* ¶ 16.)

**B.     Procedural Background**

On November 30, 2023, Plaintiffs filed a Complaint against Defendant Traditions in the Court of Common Pleas of Cuyahoga County, Ohio, alleging Breach of Account Agreement (Count I) and Unjust Enrichment (Count II). (Removal at PageID 1, ECF. No. 1.) Plaintiffs referenced and attached three exhibits to their original Complaint: the credit application underlying the account agreement, a statement of unpaid invoices, and Plaintiffs' notice of default to Traditions. (*See* Ex. A–C at PageID 16–25.) On January 10, 2024, Traditions removed the action to this court, asserting as the basis for federal jurisdiction complete diversity pursuant to 28 U.S.C. § 1332. (Removal at PageID 2.) Shortly after removing the case, Defendant Traditions filed a Motion to Dismiss and Transfer Venue (ECF Nos. 5, 6) ("January Motion") on January 26, 2024. Attached to Defendant's Motion was a "Building Supply Agreement" ("BSA"), a document not referenced in or attached to the Complaint, but principally relied on by Traditions for why the court should dismiss and transfer

Plaintiffs' suit. (Jan. Mot. at PageID 52.)

On February 5, 2024, Plaintiffs filed an Amended Complaint (ECF No. 7) adding TOA as a Defendant and a claim for Declaratory Judgment. In its claim for Declaratory Judgment, Plaintiffs addressed the document that Defendant Traditions discussed and attached to its January Motion. (Am. Compl. at PageID 63.) Plaintiffs alleged that sometime in 2018 they were approached by Defendant TOA about possibly entering a building supply agreement. (*Id.* ¶ 26.) During negotiations about the proposed agreement, TOA sent Famous a draft for review. (*Id.* ¶ 27.) Famous rejected the draft agreement and sent TOA a counteroffer draft agreement which included additional terms and conditions about delivery, timely receipt of materials, and how the parties could terminate the agreement. (*Id.* ¶ 28; Ex. E at PageID 586.) TOA rejected Famous's counteroffer by failing to execute and return the revised draft or communicate in a reasonable time its acceptance. (*Id.* ¶ 29.) Famous also attached to the Amended Complaint the three exhibits originally included, as well as 502 pages of unpaid invoices related to the Account Agreement and a version of the BSA which included an addendum not referenced in Traditions' January Motion. (*See* Exs. C, E at PageID 77–578, 580–586.)

Four days after filing the Amended Complaint, Plaintiffs filed a Brief in Opposition (ECF No. 8) to Defendant Traditions' January Motion. In their Brief, Plaintiffs argued the January Motion should be denied because the Amended Complaint made it moot, it was improperly based upon matters outside Plaintiffs' Original Complaint, and Plaintiffs did not enter the alleged BSA. (Opp'n at PageID 587.) Defendant Traditions did not file a Reply in support of its January Motion, but Traditions and TOA did file a Motion to Dismiss and/or Transfer the Amended Complaint ("April Motion") on April 9, 2024. (ECF Nos. 12, 13.) Notably, Defendants made substantively the same

arguments in their April Motion as those in the January Motion, but they did not attach the alleged BSA. Rather, Defendants only referenced the version Plaintiffs included to support their claim for declaratory judgment. (April Mot. at PageID 609.) Plaintiffs filed their Opposition Brief (ECF No. 15) on May 9, 2024. On September 26, 2024, the court denied Defendant Traditions's January 26, 2024, Motion to Dismiss as moot. (ECF No. 16.) The Motion responding to Plaintiffs' Amended Complaint is now fully briefed and ripe for review.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

The court examines the legal sufficiency of a plaintiff's claims under the Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court clarified the law regarding what a plaintiff must plead in order to survive a motion made pursuant to Rule 12(b)(6) in *Bell Atl. Corp. v Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court, in *Iqbal*, further explained the "plausibility" requirement, stating that "[a] claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. Furthermore, [t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Generally, when ruling on a Rule 12(b)(6) motion, the court is limited to the allegations of the complaint and any exhibits attached thereto. *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008). Federal Rule of Civil Procedure 10(c) allows the court to consider a copy of any "written instrument" attached as an exhibit to a pleading to be part of the pleading "for all purposes." Fed. R. Civ. P. 10(c). Such "written instruments" include "a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement." *Benzon v. Morgan Stanley Distributors, Inc.*, No. 3:03-0159, 2004 WL 62747, *2 (M.D. Tenn. Jan. 8, 2004), aff'd, 420 F.3d 598 (6th Cir. 2005). Contracts and other writings on which a party's action or defense is based fall within this definition. *Id.*

**B.     Motion to Transfer Venue**

Section 1404 of Title 28 governs the transfer of actions from one court to another. Subsection (a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A district court should consider "the private interests of the parties, including their convenience and the convenience

of potential witnesses, public-interest concerns, as well as whether the transfer is in the interests of justice," when ruling on a motion to transfer. *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 567 (6th Cir. 2019) (citing *Moses v. Bus. Card Express Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). The Supreme Court explained in *Atlantic Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 59 (2013), that this subsection is essentially "a mechanism for enforcement of forum-selection clauses that point to a particular federal district."

In the Sixth Circuit, courts should uphold a forum selection clause "unless there is a strong showing that the clause should be set aside." *Boling*, 771 F. App'x at 568 (citing *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009)). In a diversity suit, federal law governs the enforceability of a forum selection clause. *Wong*, 589 F.3d at 826. Courts evaluate the enforceability of a forum selection clause by considering: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.* at 828. "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Id.*

### III. LAW AND ANALYSIS

**A.     Motion to Dismiss**

Defendants first argue that Plaintiffs' Breach of Account Agreement and Unjust Enrichment claims should be dismissed for failure to state a claim because they arise from the Account Agreement ("AA"), which Defendants contend is not the contract governing the goods and services for which Traditions and/or TOA allegedly failed to pay. (April Mot. at PageID 610.) Instead, Defendants assert that the controlling contract is a fully integrated Building Supply Agreement

("BSA") which Defendants claim Famous and TOA entered August 12, 2016. (*Id.* at PageID 605.) Because the BSA governs, Defendants argue this court should apply Pennsylvania law to decide the Motion to Dismiss, and it should transfer the case to the District Court for the Western District of Pennsylvania pursuant to the BSA's forum selection clause. (*Id.*)

Plaintiffs maintain that the operative contract between the parties is the AA, and it is from that agreement that their claims arise, not the alleged BSA. (Opp'n at PageID 619.) Further, Plaintiffs contend that the BSA cannot govern the parties' relationship because (1) Defendants offer no evidentiary support for their contention that the BSA is a valid, enforceable contract; (2) neither Plaintiff is listed as a party to the BSA, nor is Traditions; and (3) at the motion to dismiss stage, the court accepts as true and draws all reasonable inferences from Plaintiffs' fact allegations about the AA and BSA. (Opp'n at PageID 624–25.) Plaintiffs' arguments are well-taken.

Plaintiffs correctly assert that on a motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and determines whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. By arguing that the BSA controls the instant contract dispute, Defendants outright ignore Plaintiffs' well-pleaded factual allegations and essentially ask the court to enforce an integration clause of an alleged agreement between the parties. (Mot. at PageID 610–11.) This argument is inappropriate at the motion to dismiss stage. *See Prestige Display & Packaging, LLC v. Temple-Inland, Inc.*, No. 1:11-CV-00710, 2012 WL 2319253, at *3 (S.D. Ohio June 19, 2012).

In *Prestige Display*, the defendant made a similar argument to that made by Traditions and TOA in this case. Like Traditions and TOA, the *Prestige Display* defendant moved to dismiss the plaintiff's complaint on the basis that a document other than the one plaintiff based its claims was

the controlling agreement between the parties. *Id.* at *1. That agreement, like the alleged BSA, contained a forum selection clause, and, according to the defendant, governed the parties' disputed transactions. *Id.* at *3. The *Prestige Display* court declined to substitute the agreement explicitly referenced in and attached to the plaintiff's complaint for the document the defendant claimed was controlling, especially since the alleged document was not attached to the defendant's motion to dismiss. *Id.* In doing so, the court concluded that:

> On the record before it, the Court cannot ascertain whether the Terms of Sales Contract should govern this matter and, assuming *arguendo*, that it does, the Court cannot determine, on this record, whether it is enforceable against the parties.

*Id.* at *4. That same logic can apply here.

In their Motion, Traditions and TOA ask this court to enforce two provisions of an alleged agreement between the parties: an integration clause and a forum selection clause. However, they do not attach the version of the BSA they argue controls to their Motion, nor do Plaintiffs reference any version of the BSA in their breach of contract or unjust enrichment claims. It is true that Plaintiffs discuss a draft version of the BSA in their claim for declaratory judgment, and attach said draft to their Amended Complaint. Even so, Plaintiffs allege facts about the draft BSA from which the court can plausibly infer that the document Defendants claim controls the dispute does not exist. Also, Defendants do not challenge these allegations in their Motion. Thus, like the *Presige Display* court, this court cannot ascertain whether the terms of the BSA govern this matter or whether it is enforceable against the parties. Accordingly, the court examines the sufficiency of Plaintiffs' Amended Complaint as it relates to the Account Agreement, not the purported Building Supply Agreement.

Plaintiffs allege Defendants breached the AA by failing to pay for the goods and materials they purchased and Plaintiffs delivered. (Am. Compl. ¶¶ 19, 21.) To state a claim for breach of contract under Ohio law, Plaintiffs must establish that (1) a contract existed, (2) Plaintiffs fulfilled their obligations, (3) Defendants failed to fulfill their obligations, and (4) Plaintiffs suffered damages as a result of Defendants' failure. *Pavlovich v. National City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware* Co.,807 N.E.2d 953, 957 (Ohio Ct. App. 2004)). Plaintiffs must also show that there was a "meeting of the minds" and that the contract was definite as to its essential terms. *Episcopal Retirement Homes, Inc. v. Ohio Dept. Of Indus. Relations*, 575 N.E.2d 134 (Ohio 1991).

The court finds that the Amended Complaint adequately pleads all four elements for a breach of contract claim under Ohio law. First, Plaintiffs allege the AA constitutes a valid agreement between the parties that was entered into via the credit application submitted by Traditions and/or TOA Construction on or about February 8, 2023. (Am. Compl. ¶ 7.) The credit application, attached as Exhibit A, also supports a finding that Plaintiffs sufficiently alleged the existence of a valid agreement, as it shows Defendant Traditions as the applicant, a signature by the applicant's CFO, and acknowledgment of the terms and conditions for entering the account agreement with Famous. (Ex. A at PageID 68–69.) While some of the credit terms are crossed out, each of these edits is accompanied by what appears to be an initial, from which the court can reasonably infer are agreed-to deletions. (*Id.*) The credit Application also includes notations referencing attachments detailing the applicant's "Trade References," "Names of Owners or Partners," "Names of Officers," and "Key Contacts." (*Id.*) While these attachments are not part of the Amended Complaint, the credit application still appears to contain the essential terms needed for the court to determine what the

agreement is, when a breach occurs, and a basis for giving an appropriate remedy. *See Steinen v. Ohio Div. of Wildlife*, 36 N.E.3d 196, 202 (Ohio Ct. App. 2015) ("The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy") (internal citations omitted). Thus, the court can still accept as true Plaintiffs' allegation that the AA is a valid agreement between the parties at the motion to dismiss stage.

Second, Plaintiffs sufficiently allege they fulfilled their obligations under the AA by pleading that "[i]n reliance upon the credit application, Famous opened an account for Traditions and/or TOA Construction[,]" and that "Famous duly delivered and/or supplied all the goods and/or materials that Traditions and/or TOA Construction ordered from Famous and issued invoices." (Am. Compl. ¶¶ 10, 12.) Accepting these allegations as true, the court finds Plaintiffs satisfy the second element for an Ohio breach of contract claim.

With regards to Defendants' breach, Plaintiffs allege that, "Traditions and/or TOA Construction then proceeded to purchase goods and/or materials from Famous, on account, for various improvement projects,]" and that "Traditions and/or TOA Construction failed to pay Famous for all the goods and/or materials that Traditions and/or TOA Construction ordered from Famous, and accumulated an unpaid principal balance on its account [...]." (*Id.* ¶¶ 11, 14.) In support of this factual allegation, Plaintiffs point to Exhibits B and C to the Amended Complaint. Exhibit B is a Statement of Famous's outstanding and unpaid invoices, and Exhibit C is copies of those invoices listed in the Statement. (Exs. B, C at PageID 70–578.) From these Exhibits, the court can reasonably infer that Defendants have breached the AA by failing to fulfill their obligation of paying for the products purchased on account from Famous. Thus, the third element is satisfied.

Finally, Plaintiffs sufficiently allege facts as to damages resulting from Defendants' breach

by pleading the amount unpaid by Defendants on their account with Famous is $168,788.98 plus interest. (Am. Compl. ¶ 14, 22.) Bolstering this allegation is Exhibit D, which is a Notice of Default of Account Agreement and Demand for Payment sent to Traditions notifying it of its obligation under the AA and the amount owed. (Ex. D at PageID 579.) Construing these facts in the light most favorable to Plaintiffs and accepting them as true, the court finds Plaintiffs sufficiently pled damages under Ohio contract law. Therefore, Count One of the Amended Complaint survives Defendants' Motion to Dismiss.

Count Two of the Amended Complaint is for unjust enrichment. Defendants argue this claim is barred by the "gist of the action doctrine" because it arises from the same agreement—which they maintain is the BSA—for materials and services and seeks the same amount in damages as pled in Plaintiffs' breach of account agreement claim. (April Mot. at PageID 611–12.) Plaintiffs contend that Ohio law permits pleading unjust enrichment as an alternative to breach of contract when the validity and enforceability of the AA is still disputed. (Opp'n at PageID 626.) Plaintiffs' argument is well-taken.

Ohio law recognizes alternative pleading, meaning that "a party may plead both a breach-of-contract claim and an unjust-enrichment claim without negating the validity of either claim." *Cristino v. Adm'r*, 977 N.E.2d 742, 753 (Ohio Ct. App. 2012). A party cannot recover under both theories when the contract claim and unjust enrichment claim rely on the same subject matter, but "[t]he mere presence of both claims in a complaint does not warrant the dismissal of the unjust-enrichment claim" on a 12(b)(6) motion. *Id. See also Bldg. Indus. Consultants, Inc. v. 3M Parkway, Inc.* 911 N.E.2d 356 (Ohio Ct. App. 2009). Because the parties still dispute the validity and enforceability of the AA, Defendants' argument for dismissing Plaintiffs' unjust enrichment claim

is unpersuasive.

To establish a claim for unjust enrichment under Ohio law, a plaintiff must show: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984). Here, Plaintiffs sufficiently plead each element by alleging that (1) it conferred a benefit to Defendants by allowing Defendants to purchase on credit building materials and services from Famous, (2) Defendants knowingly received, accepted, and retained those services; and (3) such retention of those services and materials by Defendants would be unjust without payment. (Am. Compl. ¶¶ 7, 10–14, 21–24.) Accordingly, Count Two of Plaintiffs Amended Complaint to survives Defendants' 12(b)(6) Motion to Dismiss.

Because Plaintiffs have adequately stated claims for Breach of Account Agreement and Unjust Enrichment, Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 12,13) is denied.

**B.     Motion to Transfer**

Defendants argue that this action should be transferred to the Western District of Pennsylvania pursuant to 28 U.S.C. 1404(a) because the BSA contains a forum selection clause declaring that any litigation arising from it must be brought in Pennsylvania. (April Mot. at PageID 612.) Plaintiffs reject this assertion by explaining they have not brought any claims under the BSA, and even if the court construes Defendants' request as one not limited to claims under the BSA, the argument still fails because it it premised on the BSA being a valid and enforceable contract. (Opp'n at PageID 627.) The court agrees with Plaintiffs.

Defendants Motion for Transfer puts the cart before the horse. At this stage of litigation, the court must accept as true Plaintiffs' well-pleaded allegations that its claims arise under the AA, not the BSA, and that Plaintiffs never entered the BSA. (Am. Compl. ¶ 28.) It is true that courts can enforce a forum selection clause before deciding the overall validity of a contract. *See Contract Transp. Servs. v. New Era Lending LLC*, No. 1:17-CV-1322, 2017 WL 7371188, * 3 (N.D. Ohio, Oct. 2, 2017) (rejecting plaintiffs' argument that the forum selection clause could not be enforced based on plaintiffs challenging the validity of the contract overall because "[a] forum-selection clause is severable from the remaining contract."); *Yaroma v. CashCall, Inc.*, 130 F.Supp. 3d 1055, 1060 (E.D. Ky. 2015) (citing *Shell v. R.W. Sturge, Ltd.*, 55 F. 3d 1227, 1232 (6th Cir. 1995) (same)). But in those cases, there was only one or one set of controlling agreements being challenged, whereas here there are two alleged agreements, and the one containing the forum selection clause is not the agreement on which Plaintiffs base their claims. Accordingly, the court declines to evaluate the enforceability of the BSA forum selection clause at the motion to dismiss stage. And, because Defendants rest their entire Motion to Transfer on the forum selection clause and do not otherwise address the factors courts consider when ruling on a motion to transfer under 28 U.S.C. § 1404(a), the court denies the Motion.

### IV. CONCLUSION

For the foregoing reasons, the court denies Defendants' Motions to Dismiss and Transfer Venue (ECF Nos. 12, 13).

IT IS SO ORDERED.

                                       */s/ SOLOMON OLIVER, JR.*
                                       UNITED STATES DISTRICT JUDGE

March 10, 2025